**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| **JAYSON CRAWFORD,** | § § § | |
| **Plaintiff.** | § § | |
| VS. | § § | Civil Action No. _____ |
| | § § | |
| **SOUTHWEST AIRLINES CO. BOARD OF TRUSTEES AND METROPOLITAN LIFE INSURANCE COMPANY,** | § § § § § | |
| **Defendants.** | § § | |

## ORIGINAL COMPLAINT

1. Jayson Crawford ("Plaintiff" or "Crawford") files this Complaint against Southwest Airlines Co. Board of Trustees ("Southwest") and Metropolitan Life Insurance Company ("MetLife").

## I.
## Parties

2. Plaintiff, Jayson Crawford, is an individual and resident of Galveston County, Texas.

3. Southwest is the Plan Administrator for the Southwest Airlines Benefits Plus Plan, which conducts business in and has its principal place of business in Texas. Southwest can be served with citation by serving the Plan Administrator, by certified mail, return receipt requested, at Southwest Airlines Co. Board of Trustees, c/o Southwest Airlines Co., 2702 Love Field Dr., PO Box 36611, HDQ-6EB, Dallas, Texas 75235.

4.      MetLife is an insurance company licensed to do business in Texas, with its principal place of business in New York.  MetLife can be served with citation by serving its Attorney for Service, C T Corporation System, by certified mail, return receipt requested, at 350 North Saint Paul St., Suite 2900, Dallas, Texas 75201-4284.

## II.
## Jurisdiction and Venue of ERISA Claims

4.      This action against Southwest and MetLife arises under the Employee Retirement Income Security Act of 1974 ("ERISA" or the "Act"), 29 U.S.C. §1001 *et. seq.*

5.      This Court has jurisdiction over the action pursuant to 29 U.S.C. § 1132(e)(1).

6.      Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) because the breach occurred in this district.

7.      Pursuant to 29 U.S.C. § 1132(h), this Complaint has been served upon the Secretary of Labor, Employee Benefits Security Administration, 200 Constitution Avenue, N.W., Washington, D.C. 20210 and the Secretary of the Treasury, 1500 Pennsylvania Avenue, Washington, D.C. 20220, by certified mail return receipt requested.

## III.
## Factual Background

8.      Southwest Airlines employed Plaintiff Jayson Crawford's wife, Tracy Crawford ("T. Crawford"), as a flight attendant.  While employed by Southwest, T. Crawford was a participant in the Southwest Airlines Co. BenefitsPlus Plan (the "Plan"), a welfare benefit plan that provided group life and accidental death and dismemberment insurance benefits to Southwest employees and their dependents.

9.      Prior to 2013, the Plan was funded through a group life insurance policy issued by The Standard, which was also the claims administrator under the Plan. While The Standard insured

the Plan, T. Crawford had designated her grand-nephew as the beneficiary of her life insurance proceeds.

10. On August 15, 2011, T. Crawford married Jayson Crawford ("Crawford"). Once they were married, T. Crawford and Crawford made changes to their bank accounts, insurance policies and employee benefits so that they would have survivor and/or beneficiary rights in the event one of them predeceased the other.

11. As part of this process and upon information and belief, T. Crawford changed the beneficiary for her life insurance benefits under the Southwest plan to Crawford by completing a beneficiary designation form on Southwest's online enrollment system. At this time, T. Crawford also named her husband as the beneficiary for her account funds in her Southwest Airlines Co. 401(k) Plan and Profit Sharing Plan.

12. On January 1, 2013, the terms of the Plan changed when The Standard ceased being the life insurance carrier for the Plan. As of that date, the Plan became funded by a group life insurance policy (the "Policy") issued by MetLife and MetLife became the claims administrator. Southwest also amended the Plan and distributed a new Summary Plan Description ("SPD") to Southwest employees. Southwest was the Plan Administrator for the Plan.

13. The SPD provided that upon enrollment in the Plan, a participant should designate a beneficiary "through the MetLife website at www.metlife.com/my benefits. Effective June 15, 2013, paper life insurance designation forms will not be accepted by the Health & Wellness Team except for Committed Partner designations as described immediately below."

14. The SPD also provided the following:

> **Beneficiaries:** When you Enroll in the Life and AD&D Insurance Program, You must name a beneficiary who will receive Your benefit if You die. You may name anyone You want. You must name one or more primary beneficiaries (who receive Your benefit first) and one or more contingent

beneficiaries (who receive Your benefit if Your primary beneficiary dies before receiving it). Your beneficiary designation must be the same for Life and AD&D insurance death benefits.

\*\*\*

If You do not name a beneficiary for the Life Insurance and AD&D Program or if no beneficiary survives You, then the Insurance Carrier will pay in order to (i) Your surviving Spouse (or if in Benefits Plus Your surviving Committed Partner), (ii) Your surviving children in equal amounts, (iii) Your surviving parents in equal amounts, (iv) Your surviving brothers or sisters in equal amounts, or, finally, (v) Your estate.

15. The SPD defined "Enroll/Enrollment" as the "completion of all forms required for coverage under the Plan and agreement to make any required contributions."

16. The Plan provided, in accordance with the language in the SPD, that: "If there is no Beneficiary designated or no surviving designated Beneficiary at Your death, We may determine the Beneficiary to be one or more of the following who survive You … Your Spouse or Domestic Partner."

17. T. Crawford enrolled in the new Plan on the online enrollment system as was required to obtain benefits under the Plan and by doing so she acknowledged she had read and understood the terms outlined in the SPD. Upon information and belief, T. Crawford did not designate a beneficiary because of the language in the SPD that provided her life insurance benefits would be paid to Crawford, her spouse, if she left the beneficiary designation blank.

18. Neither the SPD or the Plan put T. Crawford on notice that her 2008 beneficiary designation under the previous plan funded with The Standard policy would still be in effect. Instead, the SPD specifically informed T. Crawford that she was to enroll online to obtain benefits, designate her life insurance beneficiary on the MetLife website, and that her failure to make a designation would result in the default election of her spouse, Crawford, as the beneficiary.

19. When T. Crawford enrolled in the Plan she opted to receive Basic Life insurance benefits in the amount of $50,000 and Optional Employee Life insurance benefits at six times her annual salary for a total of $381,000.

20. T. Crawford suddenly passed away on December 15, 2014. On December 23, 2014, Crawford provided the requisite notice of T. Crawford's death to MetLife, and as the spouse of T. Crawford, made a claim for the proceeds from the Plan.

21. Therefore, at all pertinent times, Crawford was a beneficiary under the Plan within the meaning of 29 U.S.C. § 1002(8).

22. Immediately upon receiving Crawford's claim, MetLife determined, in complete disregard of the language in the SPD and the Plan, that T. Crawford's 2008 beneficiary designation of her great-nephew was the valid designation on file. Rather than providing Crawford with a full and fair review of his claim, MetLife sent a claim packet to the mother of T. Crawford's great-nephew so that she could make a claim for the life insurance proceeds on her son's behalf.

23. On February 2, 2015, MetLife denied Crawford's claim, stating that Crawford was not the beneficiary and that according to their records, "the latest beneficiary designation on file that was completed by the decedent was on April 25, 2008" and that this designation, albeit under a previous policy and prior version of the Plan, did not designate Crawford as beneficiary.

24. On February 11, 2015, Crawford through an attorney, filed his formal appeal.

25. On March 23, 2015, MetLife denied Crawford's formal appeal. MetLife upheld its decision that T. Crawford's 2008 beneficiary designation was valid, a designation made well before the MetLife policy at issue came into effect and under a previous version of the Plan.

26. On April 26, 2015, despite having conflicting claims for the life insurance proceeds that would have warranted the filing of an interpleader action for a judicial determination of the

rightful beneficiary under the Plan, MetLife issued payment to T. Crawford's great-nephew for $431,212.55—the total amount of the life insurance proceeds plus interest.

27.   Crawford, through his attorneys, repeatedly requested documentation of T. Crawford's beneficiary designations and online enrollment forms for the Plan funded by the MetLife policy from both Southwest and MetLife for many months.  Although Crawford was provided with the 2008 beneficiary designation, neither entity ever provided any of the enrollment documents.

28.   On or about October 19, 2015, Crawford hired the undersigned attorneys to represent him in this matter. On October 19, 2015, Crawford, through his counsel, again requested in writing the enrollment documentation from both MetLife and Southwest.  Southwest ignored the request.  MetLife responded and advised Crawford that he should request the information from Southwest as the Plan Administrator.

29.   Thereafter, Crawford, through his attorney, sent another written request to Southwest for the documents.  Southwest once again ignored the request.  Therefore, Southwest is liable for penalties up to $110 a day for its failure and refusal to provide the requested Plan documents.

30.   MetLife's decision to deny Crawford's claim for benefits and to uphold that decision on appeal was utterly unreasonable and is unsupported by the evidence.  Further, MetLife failed to provide Crawford with a full and fair review of his claim.

## IV.
## COUNT ONE AGAINST SOUTHWEST
### Administrator's Refusal to Supply Requested Information Under 29 USC § 1132(c)

31. ERISA imposes penalties upon a plan administrator that fails or refuses to comply with a request for information that an administrator is required to provide under the statute to a claimant.

32. Under 29 CFR § 2560.503-1—the regulations governing claims procedures—an administrator is required to provide a claimant with all documents, records, and other information relevant to the claimant's claim for benefits. These documents include all documents, records and information (i) relied upon in making the benefits determination, (ii) that was submitted, considered or generated in the course of making the benefit determination, regardless whether it was considered in making the benefit determination, and (iii) that demonstrate compliance with the administrative processes and safeguards required to be followed in making the benefit determination.

33. Crawford, through his various counsel, repeatedly requested enrollment documentation for T. Crawford from Southwest. Southwest refused and failed to provide these documents, records and information despite repeated requests by Crawford and his attorneys in violation of 29 USC § 1132(c).

34. Therefore, Southwest is liable to Crawford for penalties of up to $110 a day from for its failure and refusal to provide the requested documents.

## V.
## COUNT TWO AGAINST METLIFE
### Breach of the Plan and Policy Provisions Claim

35. Pursuant to 29 U.S.C. § 1132 (a)(1)(B), Crawford is entitled to life insurance benefits because he is the legal beneficiary under T. Crawford's policy.

36. Crawford has complied with his obligation to make proof of claim in accordance with the policy's requirements and he has exhausted his remedies under the Policy.

37. Crawford is entitled to have the Court conduct a trial *de novo* of the issues stated herein because MetLife operated under a conflict of interest and it failed to conduct a full and fair review of Crawford's claim.

38. In the alternative, MetLife's decision to deny Crawford's benefits was arbitrary and capricious.

39. Crawford is entitled to life insurance benefits because MetLife's decision to not issue payment under the policy were not based on substantial evidence and its investigation of his claim was so flawed and self-interested that its decision to deny Crawford's benefits were unreasonable.

40. The life insurance plan provides that in the instance where insured, T. Crawford, dies the intended beneficiary, Crawford, is entitled to the life insurance benefits under the policy.

41. MetLife also failed to provide for a full and fair review that took into account all comments, documents, records, and other information submitted to it relating to Crawford's rights as an intended beneficiary.

## VI.
## COUNT THREE AGAINST METLIFE AND SOUTHWEST
### Reasonable and Necessary Attorney's Fees

42. Pursuant to 29 U.S.C. § 1132(g)(1), Crawford seeks an award of his reasonable and necessary attorney's fees in connection with the prosecution of this action

### Prayer

WHEREFORE, Crawford requests that the Court order:

1. Southwest to pay Crawford penalties of up to $110 a day for its failure to provide Crawford with all documents relevant to his claim.

2. MetLife to pay Crawford the full benefits to which he is entitled;

3. MetLife to pay Crawford's reasonable attorney's fees incurred in pursuing recovery of benefits owed to him;

4. MetLife to pay Crawford pre-judgment and post-judgment interest; and

5. That Crawford recovers the cost of this action and such other and further relief, as the Court may deem proper under the circumstances.

Respectfully Submitted,

**THE LAW OFFICE OF JESSICA TAYLOR**

By:  /s/ *Jessica Taylor*
JESSICA TAYLOR
Attorney-in-Charge
Texas State Bar No. 24013546
S.D. of Texas Bar No. 28529
jessica@jtaylorlaw.com

14100 San Pedro, Suite 602
San Antonio, Texas 78232
(210) 402-4022 (Telephone)
(210) 402-1225  (Fax)