UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAYSON CRAWFORD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:16-CV-2402-B |
| | § | |
| METROPOLITAN LIFE INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are: (1) Defendant Metropolitan Life Insurance Company's (MetLife) Motion for Summary Judgment (Doc. 27); and (2) Plaintiff Jayson Crawford's Objections to Defendant's Summary Judgment Evidence and Motion to Strike (Doc. 54). For the following reasons the Court **GRANTS** Defendant's Motion (Doc. 27); and **DENIES as moot** Plaintiff's Objections and Motion to Strike (Doc. 54).

### I.

### BACKGROUND[1]

This is a case for life insurance benefits payable under the Southwest Airlines Co. Welfare BenefitsPlus Plan, which is an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1971, as amended (ERISA) 29 U.S.C. § 1001 *et seq*.

Plaintiff's wife, Tracy Crawford (the Decedent), was employed by Southwest Airlines (SWA)

---

[1]The Court draws its factual summary from Plaintiff's Original Complaint (Doc. 1) as well as the parties' briefing on the Motion before the Court today. Any contested fact will be noted as such.

- 1 -

as a flight attendant. Doc. 1, Pl.'s Compl. ¶ 8. While employed, the Decedent was a participant in the SWA BenefitsPlus Plan (the Plan). *Id.* Under the Plan, SWA employees have the benefit of basic life insurance and optional life insurance coverages. Doc. 28, Def.'s Br. Supp. Mot. Summ. J. 3 [hereinafter Def.'s Br.]. The Group Life and Accidental Death and Dismemberment Plan (Life Plan) covers these benefits. *Id.* The Decedent was enrolled in the Life Plan with a total of $431,000 in coverage at the time of her death in December 2014. Doc. 28, Def.'s Br. 3; Doc. 53, Pl.'s Resp. 2.

After divorcing her first husband in 2007, the Decedent designated her great-nephew as her primary beneficiary under the Life Plan. Doc. 28, Def.'s Br. 3; Doc. 53, Pl.'s Resp. 2. She did so by submitting a paper beneficiary designation form to SWA in April 2008. Doc. 28, Def.'s Br. 3; Doc. 53, Pl.'s Resp. 2. Defendant contends that the Decedent submitted no other designation forms before her death. Doc. 28, Def.'s Br. 3. Therefore, Defendant asserts, Plaintiff was not, and never was, the named beneficiary of the Decedent's Life Plan. *Id.* at 1.

In August 2011, the Decedent married Plaintiff. Doc. 53, Pl.'s Resp. 3. Plaintiff asserts that after their marriage, they discussed making Plaintiff the beneficiary of all the benefits the Decedent received as a SWA employee. *Id.* And Plaintiff believes that the Decedent did, in fact, change her beneficiary from her great-nephew to Plaintiff by completing a beneficiary designation form on the Life Plan's online enrollment system. Doc. 1, Pl.'s Compl. ¶ 11.

On January 1, 2013, the Plan switched insurance carriers. *Id.* ¶ 12; Doc. 9, Def.'s Answer ¶ 13. As a result, Defendant began funding the Plan. *Id.* A Summary Plan Description (SPD),[2] effective January 1, 2013, was distributed to SWA employees. *Id.* That SPD, and one issued the

---

[2]Summary plan descriptions "provide communication with beneficiaries *about* the plan, but . . . do not themselves constitute the *terms* of the plan." *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011)

following year, included the following language:

> **Beneficiary Designation**: Life Insurance Beneficiary Designation must be completed through the MetLife web site at www.metlife.com/mybenefits. Effective June 15, 2013, paper life insurance designation forms will not be accepted by the Health and Wellness Team except for Committed Partner designations as described immediately below.

Doc. 29-1, Def.'s App. 75, SPD 2013; Doc. 29-1, Def.'s App. 109, SPD 2014.

Besides asserting that the Decedent formally designated Plaintiff as the Life Plan beneficiary, Plaintiff offers an alternative theory: the Decedent did not designate Plaintiff as her beneficiary because the Decedent misinterpreted the above quoted language in the Life Plan's SPD. Doc. 1, Pl.'s Compl. ¶ 17. Specifically, the Decedent allegedly believed that her designation of her great-nephew was invalidated when Defendant switched insurance carriers. *See id.* ¶¶ 17–18. Therefore, when the Decedent allegedly enrolled in the online system, she chose not to designate a beneficiary because she assumed that her previous paper designation was no longer valid and her benefits would go to her spouse according to the Life Plan's default beneficiary provisions. *Id.* ¶ 17.

In December 2014, the Decedent died after a brief illness. Doc. 1, Pl.'s Compl. ¶ 20; Doc. 28, Def.'s Br. 3. Soon after, Plaintiff provided notice to Defendant of the Decedent's death and made a claim for the proceeds under the Life Plan. Doc. 1, Pl.'s Compl. ¶ 20. To make this claim, Plaintiff sent a letter to SWA asserting that he believed he was listed as the Decedent's primary beneficiary for her Life Plan. Doc. 29-2, Def.'s App. 187, Letter. In a second letter to SWA, Plaintiff noted that he had contacted Defendant and was told that Defendant did not have an electronic beneficiary designated by the Decedent. Doc. 29-2, Def.'s App. 188, Letter. Plaintiff reasoned that this was likely due to an error during SWA's transition from the previous insurance carrier to Defendant. *Id.*

Defendant, however, denied Plaintiff's claim and determined that the correct beneficiary was

the Decedent's great-nephew. Doc. 1, Pl.'s Compl. ¶ 22. Defendant maintained that the last beneficiary designation on file was the one Plaintiff had made on paper in April 2008. *Id.* Therefore, Defendant denied Plaintiff's claim because "Plaintiff was not named as the beneficiary of the Plan Benefits and was not in [the] line of succession for the benefits because there was a valid beneficiary designation on file that does not name him." Doc. 28, Def.'s Br. 5–6 (internal quotations omitted).

After Defendant's denial, Plaintiff filed a formal appeal. Doc. 1, Pl.'s Compl. ¶ 24. On appeal Plaintiff argued that he was entitled to the Decedent's benefits because SWA allegedly told him that the 2008 designation was not made for Defendant's particular policy. Doc. 28, Def.'s Br. 6. According to Defendant, Plaintiff also argued that language in the SPD implied that any paper designation would be invalid after June 15, 2013, relying on language in the 2014 SPD that said "Life Insurance Beneficiary Designation must be completed through the MetLife web site" and "effective June 15, 2013, paper life insurance designation forms will not be accepted." *Id.* Plaintiff took this language to mean that paper designation forms would be invalidated after June 15, 2013. *See id.*

In March 2015, Defendant denied Plaintiff's formal appeal and upheld its previous decision that the 2008 designation of the Decedent's great-nephew controlled. Doc. 1, Pl.'s Compl. ¶ 25. In the letter denying Plaintiff's appeal, Defendant reiterated that Plaintiff had never been designated as the beneficiary. Defendant also stated that the language in the SPD did not revoke any prior paper designations on file. Doc. 28, Def.'s Br. 7. Even though paper designations would no longer be accepted, Defendant maintained "accepted" did not mean "invalidated." *Id.*; Doc. 29-2, Def.'s App. 217, Letter. The next month, Defendant issued payment to Decedent's great-nephew. Doc. 1, Pl.'s Compl. ¶ 26.

In June 2015, a new attorney for Plaintiff sent a letter to Defendant, which was treated as a

second appeal. Doc. 28, Def.'s Br. 8–9. In that appeal, Plaintiff argued that the language of the SPD was clear that failing to make a designation on the MetLife website would result in the default election of the Decedent's spouse. Doc. 28, Def.'s Br. 8. So the Decedent intentionally chose not to designate a beneficiary on the MetLife website. *Id.* Plaintiff argued in that appeal that the Decedent had no notice that her prior paper designation would still be valid. *Id.* But Defendant upheld its denial of benefits again. *Id.* at 9. And Defendant reiterated that Plaintiff was not the designated beneficiary and that SWA did not rescind existing paper designations when it changed to an electronic beneficiary designation process. *Id.*

Plaintiff then filed this suit under 29 U.S.C. § 1132(a)(1)(B). Doc. 1, Pl.'s Compl. ¶¶ 35–41.[3] Plaintiff argues that he is entitled to life insurance benefits because he is the legal beneficiary under the Decedent's Life Plan. *Id.* ¶ 35. Specifically, Plaintiff asserts that: (1) the Life Plan documents support this assertion; (2) Defendant operated under a conflict of interest; (3) Defendant failed to conduct a full and fair review of Plaintiff's claim; and alternatively, (4) Defendant's decision was arbitrary and capricious. *Id.* ¶¶ 37–41. Additionally, Plaintiff seeks reasonable and necessary attorneys' fees under 29 U.S.C. § 1132(g)(1). *Id.* ¶ 42.

Defendant filed its Motion for Summary Judgment in January 2017 seeking to dismiss Plaintiff's claims. Doc. 27, Def.'s Mot. Summ. J. 2. After several extensions of time to file a response, Plaintiff filed a Motion to Continue and Motion to Modify Scheduling Order to Extend Discovery Deadline. Doc. 39. During a hearing, the Court denied Plaintiff's Motion to Continue and Motion

---

[3]Plaintiff also originally sued Southwest Airlines Co. Board of Trustees for violations of 29 U.S.C. §§ 1132(a)(1)(B) and 1132(c), but voluntarily dismissed those claims in July 2016. Doc. 8, Notice of Dismissal Without Prejudice. Accordingly, the claims against Southwest Airlines Co. Board of Trustees were dismissed without prejudice. Doc. 11, Order of Dismissal.

to Modify Scheduling Order. Doc. 50, Order. Plaintiff then filed his Response (Doc. 53) in July 2017, and Defendant filed its Reply (Doc. 64). Plaintiff also filed Objections to Defendant's Summary Judgment Evidence and Motion to Strike (Doc. 54), to which Defendant filed a Response (Doc. 65). Therefore, both Motions are ripe for the Court's review.

## II.

## LEGAL STANDARD

Standard summary judgment rules control in ERISA cases. *Vercher v. Alexander & Alexander, Inc.*, 379 F.3d 222, 225 (5th Cir. 2004). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." *Burrell v. Dr. Pepper/Seven Up Bottling Grp.*, 482 F.3d 408, 411 (5th Cir. 2007). And a fact "is 'material' if its resolution could affect the outcome of the action." *Id.*

The summary judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990). Usually, this requires the movant to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). But if the non-movant ultimately bears the burden of proof at trial, the movant may satisfy its burden just by pointing to the absence of evidence supporting the non-movant's case. *Id.* at 322–23.

If the movant meets that burden, then it falls to the non-movant to "show with significant

probative evidence that there exists a genuine issue of material fact." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (internal quotation marks omitted) (citing *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). And significant probative evidence is just that: significant. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam). "[M]etaphysical doubt as to material facts," "conclusory allegations," "unsubstantiated assertions," or a mere "scintilla of evidence" will not do. *Id.* (internal citations and quotation marks omitted). Rather, "the non-movant must go beyond the pleadings and present specific facts indicating a genuine issue for trial." *Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014) (citing *Celotex*, 477 U.S. at 324).

To be sure, the court views evidence in the light most favorable to the non-movant when determining whether a genuine issue exists. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000). Yet it need not "sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)). Simply put, the non-movant must "identify specific evidence in the record" and "articulate the precise manner in which that evidence supports [its] claim." *Id.* If it cannot, then the court must grant summary judgment. *Little*, 37 F.3d at 1076.

# III.

# ANALYSIS

Under ERISA, a civil action may be brought by a participant or beneficiary[4] "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

Defendant argues that summary judgment is proper for two reasons. First, Defendant's denial of Plaintiff's claim was reasonable and not an abuse of discretion because Plaintiff was not the named beneficiary, and second, Plaintiff's alternative theory that he is the default beneficiary—based on a different interpretation of the plan—is incorrect because the 2008 beneficiary designation was still valid. Doc. 28, Def.'s Mot. Summ. J. 13–19.

In response, Plaintiff evidently abandons his original theory that he was formally named the beneficiary of the Decedent's Life Plan. Instead, Plaintiff states the suit "centers around MetLife's misinterpretation of the language contained in the applicable SPD." Doc. 53, Pl.'s Resp. 1. Plaintiff argues that: (1) Defendant's failure to inform Plaintiff that the 2008 beneficiary designation would remain valid violates ERISA; and (2) the SPD's language supports that Plaintiff is the proper Life Plan beneficiary. *Id.* at 1–2. In light of Plaintiff's arguments, the Court assumes for the purposes of this Motion that the parties agree that the Decedent did not formally designate Plaintiff as her beneficiary under the Life Plan. So the only remaining issue with regard to § 1132(a)(1)(B) concerns Defendant's interpretation of the SPD.

---

[4]Defendant does not contest Plaintiff's status as a "participant or beneficiary" as defined by the statute. Therefore, the Court will assume, without deciding, that Plaintiff qualifies as a "participant or beneficiary" under 29 U.S.C. § 1132(a)(1) and can properly bring this claim.

A.  *Summary Plan Description Interpretation*

"Benefit determinations under an ERISA plan are governed in the first instance by the plan language." *Thomason v. Metro. Life Ins. Co.*, 165 F. Supp. 3d 512, 516 (N.D. Tex. 2016) (citing *Gosselink v. AT&T, Inc.*, 272 F.3d 722, 726 (5th Cir. 2001)). "In the Fifth Circuit, courts generally apply a two-step analysis to determine whether the plan administrator abused its discretion." *Lifecare Mgmt. v. Ins. Mgmt.*, 761 F. Supp. 2d 426, 433 (N.D. Tex. 2011) (citing *Pylant v. Hartford Life & Accident Ins. Co.*, 497 F.3d 536, 540 (5th Cir. 2007)). "First, a court must determine the legally correct interpretation of the plan. If the administrator did not give the plan the legally correct interpretation, the court must then determine whether the administrator's decision was an abuse of discretion." *Gosselink*, 272 F.3d at 726.

To determine whether an administrator's interpretation was legally correct, the Court considers: "(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan." *Crowell v. Shell Oil Co.*, 541 F.3d 295, 312 (5th Cir. 2008). But when a court must interpret a summary plan description rather than a plan itself, the Court uses a different standard. *Thomason*, 165 F. Supp. 3d at 517 (citing *Rhorer v. Raytheon Eng'rs and Constr.*, 181 F.3d 634, 640 n.7 (5th Cir. 1999)).

"When a summary plan description is at issue, [the Fifth Circuit] first look[s] to see if the summary plan description is ambiguous." *Thomason v. Metro. Life Ins. Co.*, — F. App'x —, 2017 WL 3049528, at *3 (5th Cir. 2017) (citing *Koehler*, 683 F.3d at 188–89). And "'ambiguities in a plan summary are resolved in favor of the beneficiary'—even when the summary plan description is a verbatim copy of the plan." *Id.* (citing *Koehler*, 683 F.3d at 188). "Even though a plan may give a plan

administrator discretion over the plan, that discretion does not extend to the summary plan description." *Id.*

The Fifth Circuit has given the following guidance in analyzing a summary plan description rather than a plan:

> T[he] distinction stems from ERISA's statutory requirements for summary plan descriptions. ERISA requires that plan summaries be written in a manner calculated to be understood by the average plan participant, and sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan. A summary plan description is ambiguous when a reasonable plan participant could not read the summary plan description and know with any degree of certainty which conflicting inference should control, and would have to refer to the actual policy for clarification. In such circumstances, we apply the rule of *contra proferentem*, which resolves ambiguities against the drafter. Therefore, the administrator's proposed interpretation will be deemed legally incorrect under the first part of [the Fifth Circuit's] two-party inquiry.

*Id.* (internal citations and quotations omitted).

### 1. *Contra Proferentem* Is Inapplicable

There are three documents governing the Life Plan: (1) the master Plan document; (2) the Certificate of Insurance (Certificate); and (3) the SPD. Doc. 53, Pl.'s Resp. 3; Doc. 64, Def.'s Reply 3. Here, the language at issue is in the SPD.[5] As discussed above, the first step is to determine if the

---

[5]Defendant appears to argue that while the SPD might be at issue, the Court is required to consider the Certificate in its analysis of whether the terms of the SPD are ambiguous. Doc. 64, Def.'s Reply 7. Defendant cites to the Supreme Court's decision in *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011) to argue that the Court must consider the Certificate because *CIGNA* makes clear that Courts may enforce only the terms of the "plan" rather than a summary plan description. *Id.* (citing *CIGNA*, 563 U.S. at 436).

While *CIGNA* held that courts may not enforce terms in a summary plan description as terms of the plan itself, plaintiffs may still contest a denial of benefits on the grounds that a plan administrator misinterpreted the summary plan description. *Thomason*, 165 F. Supp. 3d at 522 n. 3 (finding that where "the SPD is incorporated into the plan by reference . . . [plaintiff's] arguments regarding the proper interpretation of the SPD are merely part of his action to enforce the plan"). So the Court is not persuaded by Defendant's insistence on using the Certificate at this point in the analysis. Because the terms of the SPD are ultimately *un*ambiguous, the Court need not resolve this argument. Furthermore, because the terms of the Certificate support the same finding, the Court's outcome would not change even if it did consider the Certificate in

SPD is ambiguous. If the Court finds an ambiguity, the Court must apply the rule of *contra proferentem*, which resolves ambiguities against the drafter. *Thomason*, 2017 WL 3049528, at *3 (citing *Koehler*, 683 F.3d at 188).

Defendant argues that the terms of the SPD are unambiguous, so *contra proferentem* does not apply. Doc. 64, Def.'s Reply 7. Plaintiff argues that *contra proferentem* does apply but fails to point to a specific phrase or term in the SPD that he believes is ambiguous. *See* Doc. 53, Pl.'s Resp. 14–21. Indeed, Plaintiff states that "any ambiguities in the SPD at issue—to the extent they exist—must be resolved in favor of [Plaintiff]." *Id.* at 15. Instead of arguing that the SPD is ambiguous, Plaintiff asserts that his interpretation of the SPD is correct and brings several arguments to support his point. *Id.* at 18–21. Therefore, the Court will consider Plaintiff's arguments and whether they are based on any identifiable ambiguities in the SPD.

Plaintiff's argument boils down to his assertion that his interpretation of the SPD is correct. Specifically, Plaintiff believes the SPD informed participants that any Life Plan designation on file before January 1, 2013—when Defendant started funding the Plan—would be invalid after that date, so participants were required to make a new Life Plan beneficiary designation using Defendant's online enrollment system.

Even though Plaintiff cites to multiple provisions, Plaintiff's arguments concern the following "Beneficiary Designation" provision:

> **Beneficiary Designation**: Life Insurance Beneficiary Designation must be completed through the MetLife web site at www.metlife.com/mybenefits. Effective June 15, 2013, paper life insurance designation forms will not be accepted by the Health and Wellness Team except for Committed Partner designations as described immediately

---

determining whether the SPD is ambiguous.

below.

Doc. 29-1, Def.'s App. 109, SPD 2014

Plaintiff first attacks Defendant's failure to include a provision informing employees that any designations made before 2013 would remain valid after 2013. *Id.* at 18–19. Plaintiff bolsters this argument by citing to 29 U.S.C. § 1022(a). *Id.* at 18.[6] This section provides the information that must be included in a summary plan description and how it should be written. 29 U.S.C. § 1022(a). For example, a summary plan description must be written in a manner "calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." *Id.* So by inadequately informing employees about the status of their prior designations, Plaintiff argues, Defendant violated this provision. *See* Doc. 53, Pl.'s Resp. 18–19.

Even though Plaintiff tries to bolster his argument using § 1022, the argument is better suited to considering whether Defendant abused its discretion, which the Court considers below. The issue here is whether the terms of the SPD are ambiguous. Concerning the Beneficiary Designation provision quoted above, Plaintiff seems to argue that if this provision contained an additional sentence indicating that the Decedent's paper designation from 2008 would remain valid, then any ambiguity would be resolved.

The Court, however, does not find this argument persuasive. First, Plaintiff fails to cite to any authority supporting his position that the failure to include specific information creates an ambiguity in a SPD. *Corbello v. Sedgwick Claims Mgmt. Servs., Inc.*, 856 F. Supp. 2d 868, 883 (N.D. Tex. 2012)

---

[6]Plaintiff actually cites to 29 U.S.C. § 1002(a), but the quoted language comes from § 1022(a). So the Court will consider Plaintiff's argument as citing to § 1022(a).

(finding a plaintiff's argument that a summary plan description was ambiguous due to the failure to include the term "objective" was without merit where the plaintiff failed to cite any authority supporting that point). Second, if Plaintiff's logic is accepted, then any plaintiff could reject a plan administrator's interpretation by arguing that the SPD is ambiguous because it lacks a sentence explaining the administrator's exact interpretation.

Plaintiff's second argument concerns the phrase "Life Insurance Beneficiary Designation" as used in the Beneficiary Designation provision quoted above. Plaintiff considers the definition of "Life Insurance" in the Definitions section of the SPD and traces it through multiple definitions to conclude that "Life Insurance" means only life insurance as funded by MetLife.[7] It appears that Plaintiff is arguing that "Life Insurance" cannot apply to the Plan as funded by any other insurance carrier. So when the Beneficiary Designation provision provides that "Life Insurance Beneficiary Designation must be completed through the MetLife web site," Plaintiff contends that it means that all employees, regardless of whether they had designated a beneficiary when the previous insurance carrier funded the Plan, had to make a new designation with MetLife.

This argument, however, is based not on an ambiguity, but on the definitions provided in the SPD. Defendant does not dispute the definition of "Life Insurance." *See Corbello*, 856 F. Supp. 2d at 883 (finding a plaintiff's allegation that a term was ambiguous was without merit, especially when the plaintiff relied on the definition of the term to make an additional argument). The dispute is over

---

[7]"Life Insurance" is defined as "[l]ife insurance under the Group Policy." Doc. 56-4, Pl.'s App. 153, SPD 2014. And "Group Policy" is defined as "t]he group Life Insurance policy issued by the Insurance Carrier to the policyholder and identified by the Group Policy number." *Id.* at 151. "Insurance Carrier" is defined as "[a]ny insurance carrier that funds and administers claims under the Plan. The name and contact information of insurance carriers is shown in Section 1 of this SPD." *Id.* at 152. Finally, in Section 1, MetLife is listed as the carrier for the Life Plan. *Id.* at 121.

how the term is used in the context of the rest of the provision.

As cited above, the provision at issue is as follows:

> **Beneficiary Designation**: Life Insurance Beneficiary Designation must be completed through the MetLife web site at www.metlife.com/mybenefits. Effective June 15, 2013, paper life insurance designation forms will not be accepted by the Health and Wellness Team except for Committed Partner designations as described immediately below.

Doc. 29-1, Def.'s App. 109, SPD 2014. Plaintiff interprets the phrase "Life Insurance Beneficiary Designation must be completed through the MetLife web site" to mean that the only valid designations are those made while MetLife funded the Plan. So if a participant had not yet designated a beneficiary under MetLife, he or she would have to do so on the MetLife web site. *See* Doc. 53, Pl.'s Resp. 19–21.

Defendant considers the other applicable provision in the SPD as stated below:

> **Beneficiaries**: When You Enroll in the Life and AD&D Insurance Program, You must name a beneficiary who will receive Your benefit if You die. You may name anyone You want. You must name one or more primary beneficiaries (who receive Your benefit first) and one or more contingent beneficiaries (who receive Your benefit if Your primary beneficiary dies before receiving it.) Your beneficiary designation must be the same for Life and AD&D Insurance benefits.

Doc. 29-1, Def.'s App. 114, SPD 2014. Defendant argues that when these provisions are read together, they mean that "a participant must name a beneficiary when he or she enrolls in the Plan, the participant may name anyone as the beneficiary, the participant must name primary and contingent beneficiaries, and the participant may change the beneficiary at any time on the MetLife website." Doc. 64, Def.'s Reply 4. Defendant also focuses on the phrase "[e]ffective June 15, 2013, paper life insurance designation forms will not be accepted." *Id.* at 4–5 (citing Doc. 29-1, Def.'s App. 109, SPD 2014). Defendant states that the dictionary definition of "accept" means "to receive

- 14 -

(something offered) willingly." *Id.* Therefore, Defendant reasons, the phrase simply means that after June 15, 2013, Defendant would receive only electronic applications, not paper. *Id.* To the extent Plaintiff believes "accept" means to invalidate, Defendant disagrees. *Id.* Defendant also points out that the provision applies to all tens of thousands of Life Plan participants. If Plaintiff's reading were correct, then many of those existing beneficiary designations would have become invalid in June 2013. *Id.*

To the extent Plaintiff has attempted to create an ambiguity over the word "accepted," it is unpersuasive. An ordinary plan participant would not read this provision or the term "accepted," and be confused over whether the term actually means to "invalidate," or have to go to the master Plan document or the Certificate to resolve the ambiguity. *See Thomason*, 2017 WL 3049528, at *3. As Defendant states, an ordinary plan participant would read the beneficiary designation provisions and know that when they enroll, they have to designate a beneficiary; and after June 2013, they have to do so electronically. Plaintiff attempts to read in a multitude of ambiguities that do not exist in the language.

Ultimately, Plaintiff has failed to point out any ambiguities in the SPD. A reasonable plan participant could read the SPD and know which inference should control. *Thomason*, 2017 WL 3049528, at *3. A participant would not have to refer to the actual master Plan document or the Certificate for clarification. *Id.* Thus, only one requested interpretation is reasonable. No conflicting inference exists, there is no ambiguity, and the rule of *contra proferentem* does not apply. *See Thomason*, 165 F. Supp. 3d at 520.

For those reasons, the Court concludes that only Defendant's interpretation of the SPD is reasonable. As a result, the Court need not do any further interpretation of the SPD and can move

on to the question of whether Defendant abused its discretion in denying Plaintiff's benefits claim. *See Corbello*, 856 F. Supp. 2d at 883 (moving directly to whether the denial of benefits was an abuse of discretion after deciding that the terms of the SPD were not ambiguous and that the rule of *contra proferentem* did not apply).

2. Abuse of Discretion

The only remaining issue to decide is whether Defendant abused its discretion in denying Plaintiff's claim for benefits. This inquiry typically weighs three factors: "(1) the internal consistency of the plan under the administrator's interpretation, (2) any relevant regulations formulated by the appropriate administrative agencies, and (3) the factual background of the determination and any inferences of lack of good faith." *Gosselink*, 272 F.3d at 726 (citing *Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 637–38 (5th Cir. 1992)).

*i. Internal consistency of the plan under the administrator's interpretation*[8]

Plaintiff argues that only the second and third factors weigh in his favor. Doc. 53, Pl.'s Resp. 21. Thus, it appears that Plaintiff concedes that the first factor is either neutral or weighs in favor of Defendant. Defendant likewise does not mention the first factor. Because the Court finds no overt inconsistency, and because it has already concluded that Defendant's interpretation was reasonable, the Court concludes that this first factor favors Defendant. *See Thomason*, 165 F. Supp. 3d at 521.

*ii. Relevant regulations formulated by the appropriate administrative agencies*

---

[8]The Fifth Circuit in *Rhorer* previously determined that this factor did not aid in the abuse of discretion analysis when a summary plan description was at issue because it is directed at the consistency of the *plan* itself. 181 F.3d at 643. But the Fifth Circuit has since indicated that the first factor is "again relevant because plaintiffs in these circumstances are arguing over enforcement of the actual plans, not the summary plan descriptions." *Thomason*, 165 F. Supp. 3d at 520 (citing *Dudley v. Sedgwick Claims Mgmt. Servs. Inc.*, 495 F. App'x 470, 474 n. 10 (5th Cir. 2012)). Therefore, the Court will consider all three factors.

For this factor, Plaintiff cites to the ERISA statutes and regulations governing the content and language of summary plan descriptions. Doc. 53, Pl.'s Resp. 21–22. Plaintiff argues that those provisions require Defendant to have "clearly" informed the Decedent and Plaintiff as "average plan participants" that the 2008 beneficiary designation would remain valid after 2013, or provided enough information so they would have "reasonably expected" that would be the case. *Id.* at 22 (citing 29 U.S.C. § 1022(a); 29 C.F.R. § 2520.102–2(b); 29 C.F.R. § 2520.102–3(j)(1)). Plaintiff contends that Defendant's SPD does not satisfy these regulations. *Id.* So Plaintiff reasons that the second factor weighs in his favor. *Id.* Defendant does not address this argument in its Reply. *See* Doc. 64, Def.'s Reply.

The Court has already determined that the only reasonable interpretation of the SPD is Defendant's. Therefore, an ordinary plan participant would know upon reading the SPD that any designation made before 2013 would not suddenly be invalidated. As this information is clear from the only reasonable interpretation, it follows that Defendant clearly informed participants that their designations would remain valid by the language already contained in the SPD and did not violate any of the provisions governing the content of summary plan descriptions. Therefore, this factor favors Defendant.[9]

        *iii.      Factual background of the determination and any inferences of lack of good faith*

Plaintiff argues that this factor weighs in his favor because Defendant's handling of Plaintiff's claim was "riddled with bad faith." Doc. 53, Pl.'s Resp. 22. Specifically, Plaintiff believes that Defendant didn't give Plaintiff's claim any credence, and each review of Plaintiff's claim was not a

---

[9]And even if Defendant could have made the SPD more clear, because the other two factors weigh in favor of Defendant, the ultimate outcome does not change.

review at all because Defendant had always known it would pay the Decedent's great-nephew. *Id.* at 22–23. Plaintiff alleges that while Plaintiff was pursuing a claim, Defendant "doggedly pursued" the mother of the Decedent's great-nephew to have her submit a Claimant's Statement on her son's behalf. *Id.* at 22. And before Plaintiff could submit a second appeal, Defendant paid the benefits to the great-nephew. *Id.* at 23.

Defendant rejects Plaintiff's contentions and argues that the claim file reflects that Defendant "fully considered Plaintiff's claim, investigated fully all factual assertions he made, and provided him with a full and fair review." Doc. 64, Def.'s Reply 9. Defendant points to the language in the Certificate that states a "claim form will be sent to the beneficiary or beneficiaries of record" and argues that it is not bad faith to consider two competing claims at the same time given that the great-nephew was the beneficiary of record. *Id.* (citing Doc. 29-2, Def.'s App. 147, Certificate of Insurance).

Defendant then recounts how it processed Plaintiff's claim. *Id.* at 10. Defendant provides its communication to SWA asking for the most recent beneficiary form and any designation forms on file that named Plaintiff as a beneficiary after Plaintiff notified Defendant that he was disputing the designated beneficiary. *Id.* Defendant then denied Plaintiff's claim because the last valid designation on file was for the Decedent's great-nephew. *Id.* Defendant points out that it considered Plaintiff's second appeal, even though it was not required to do so by the terms of the Life Plan or ERISA. *Id.* at 11.

It is apparent from the evidence provided that Defendant considered Plaintiff's claim to the benefits. And after Defendant found that Plaintiff was not the designated beneficiary, it still considered each of Plaintiff's appeals and reviewed the claims file several times. The evidence does

not suggest any bad faith. Plaintiff's arguments to the contrary are not supported by citations to legal authority or the administrative record. Thus, Plaintiff has failed to create a genuine issue of material fact on whether there was bad faith on the part of Defendant. Accordingly, the third factor favors Defendant.

In sum, all three factors favor Defendant. The Court therefore concludes that Defendant did not abuse its discretion in denying Plaintiff's claim to benefits. *See Thomason*, 165 F. Supp. 3d at 521. Thus, the Court determines that Defendant did not violate 29 U.S.C. § 1132(a)(1)(B).[10] And the Court **GRANTS** Defendant's Motion for Summary Judgment.

B.  *Plaintiff's Objections to Defendant's Evidence and Motion to Strike*

Plaintiff also filed a Motion to Strike and Objections to Defendant's summary judgment evidence. Doc. 54, Pl.'s Obj. to Def.'s Summ. J. Evid. and Mot. Strike. Plaintiff seeks to strike the Southwest Airlines Co. 2013 Annual Enrollment brochure from the record. Doc. 55, Pl.'s Br. Supp. Obj. to Def.'s Summ. J. Evid. and Mot. Strike 1. Yet as Defendant points out in its Reply in support of its Motion for Summary Judgment that "whether the Court considers the 2013 Enrollment Guide or not, the terms of the Life Plan are clear and unambiguous." Doc. 64, Def.'s Reply 5 n.6. The Court agrees. The Court did not rely on the Enrollment Guide in making its decision, and even if it were stricken, the outcome would be the same. As granting Defendant's Motion for Summary Judgment

---

[10]To the extent Defendant's citations to *CIGNA* amount to an argument that Plaintiff cannot challenge the SPD under § 1132(a)(1)(B), the Courtis unpersuaded. The Supreme Court in *CIGNA* held that, depending on the remedy sought, a plaintiff cannot pursue a claim to "litigate the interpretation of an SPD under § 1132(a)(1)(B)." *Dudley*, 495 F. App'x at 474 n.10. But the relief Plaintiff seeks here is to be paid wrongfully withheld benefits. And the Fifth Circuit in *Koehler* makes clear that *CIGNA* "does not bar a suit to enforce a plan." *See Koehler*, 683 F.3d at 188–89. In this case, "the SPD is incorporated into the plan by reference; thus [Plaintiff's] arguments regarding the proper interpretation of the SPD are merely part of his action to enforce the plan." *Thomason*, 165 F. Supp. 3d at 522 n.3. Unlike in *CIGNA*, Plaintiff is not seeking to rewrite the terms of the Plain. *See id.*

will terminate the case, the Court **DENIES** Plaintiff's Motion as **moot** because it is unnecessary to decide whether Defendant's evidence is admissible.

IV.

CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. 27); and **DENIES as moot** Plaintiff's Objections and Motion to Strike (Doc. 54). Final judgment will follow this Order.

**SO ORDERED.**

**SIGNED: August 17, 2017.**

_____
**JANE J. BOYLE
UNITED STATES DISTRICT JUDGE**